H. & R. M. BISH-
OP
*vs*
A. & J. HULL, &c

---

CHANCERY.

*Case* 9.

*Sept.* 13.

The case stated.

# H. & R. M. Bishop *vs* A. & J. Hull, &c.

## ERROR TO THE FLEMING CIRCUIT.

### *Vendors. Lien.*

JUDGE MARSHALL delivered the opinion of the Court.

NEWCOMB having sold a tract of land to Gaines but retaining the title, assigned one of the notes for the purchase money, to H. & R. M. Bishop, who, in June 1840, obtained a judgment thereon for about $1740, with interest, and Gaines having previously sold the same land to A. & J. Hull, who knew it was not fully paid for, and one instalment of the purchase money of this sale, amounting to $1535, coming due from the Hulls to Gaines, shortly after the date of the judgment, it was agreed between the parties that the Hulls should become the sureties of Gaines in replevying the judgment in the Clerk's office, before execution should issue, and should pay so much thereof as should equal their instalment then coming due to Gaines; that the difference between that instalment and the replevy bond, should be credited on said bond, and that the Bishops should take the note of Gaines for said difference. The bond was accordingly executed by Gaines, with the Hulls as his sureties; a credit of $271 was entered on it at its date, the note of Gaines was executed to the Bishops for $383, due immediately, which included a large amount of usury, and the balance of the replevy bond, after deducting the credit of $271, was paid by the Hulls.

After this arrangement was made, Gaines placed in the hands of the Bishops small notes amounting to about

$200, falling due to him on the 25th of December, 1840, as collateral security for his note to them, and to be collected and applied to its discharge; and in November, 1840, the Bishops recovered a judgment against Gaines upon his note for $383, the execution upon which was returned, "no property," &c. Whereupon, they filed this bill, asserting a lien upon the land, (of which the title still remained in Newcomb,) for the satisfaction of their judgment. The lien was resisted and denied by the defendants, except Newcomb, on the ground of the facts above stated, and on the allegation by the Hulls in their answer, that it was agreed in the arrangement above stated, that the lien was discharged. There was no direct evidence of such an agreement, but the Court being of opinion that the lien was discharged by the effect of the facts above stated, dismissed the bill as against the Hulls; and on the cross bill of Gaines, charging usury, referred the case to the Master to ascertain the amount of usury included in the judgment. The Bishops prosecute a writ of error for the reversal of both branches of the decree, but so much of it as relates to the usury being interlocutory, will not be further noticed, except to say, that a larpe amount of usury in the note on which the judgment was obtained, is in effect, admitted by the Bishops in their answer.

With regard to the lien, we are of opinion, that whether expressly waived or not, it is in effect lost to the complainants, by reason of the transaction between the parties. The debt of the Hulls to Gaines, was not due until October, 1840, and yet they entered into a replevy bond for its amount. to fall due in September, thus subjecting themselves to an execution before their own debt was due, and long before the land could have been sold for the debt of Gaines, held by the Bishops. It may fairly be presumed that they were induced to take this step by the expectation and understanding, that for the residue of the debt, the Bishops would look to the personal responsibility of Gaines, who, as it may be assumed, was then considered to be solvent. Again, if the Bishops did not intend to look to Gaines alone, for the residue of their debt, waiving their lien on the land therefor, why did they

Tho' a vendor retain the title and assign the notes for the {purchase money, yet if the assignee of the note accept a replevin bond of the purchaser, with a subsequent purchaser as surety for a part of the amount due by the first purchaser, falling due before the note of such subsequent purchaser, and take the individual note of the first purchaser for the balance, and other cash notes as collateral surety for the last note, it is a

H. & R. M. Bish-
    op
    vs
A. & J. Hull, &c

waiver of the
lien to the extent
of the last nam-
ed note, though
it be not proven
that it was so
agreed.

not insist that the Hulls should secure the whole judgment, which was a lien on the land? Other installments which have since been assigned, would be coming due from the Hulls to Gaines, and if the Bishops, distrusting the ability of Gaines, had intended and expected to resort to the land in the hands of the Hulls, for the excess of the re-plevy bond above their instalment then coming due to Gaines, it would have been obviously advantageous to all parties, and injurious to none, so far as now appears, to have entered on the bond or otherwise provided for a stay of execution for that excess, and a conditional satisfaction of it if Gaines should pay, rather than to have entered a present unconditional credit. And the Bishops may have expected ample compensation for giving up their ultimate lien for about one-eighth of their demand, which could only be enforced with considerable expense and delay, in the prompt payment of the other seven-eighths, and in the exorbitant premium or usury contained in Gaines' note for the one-eighth credited on the bond, which note was due at once. For what was the excess of more than $100, included in this note agreed to be paid? Not for forbearance to Gaines; for the note was due immediately. But as may be fairly inferred, on account of the change of security. The Bishops giving up their judgment and lien for $271, for the prospect of making $383. Shall they, upon the failure of this speculation by the insolvency of Gaines, be remitted to their lien, the enforcement of which would throw the loss upon others, who, by the entry of satisfaction on the replevy. bond, may have been led to believe that the lien on the land was discharged?

If the arrangement had not been made, by which the judgment against Gaines was certainly satisfied and merged, and by which, to say the least of it, the lien upon the land was apparently abandoned, the Hulls might, as far as appears, have saved themselves from loss, whether there was any thing more to be paid on their purchase of the land or not. If the lien is now enforced, the loss will be thrown either on them or on the assignees of Gaines, without prospect of indemnity. This would seem to be contrary to equity.

If it be conceded that the satisfaction of the replevy bond, and the taking of a new note for part of its amount from Gaines, did not, *ipso facto*, extinguish the lien upon the land, we think the circumstances show that there was an understanding between the parties to the arrangement, that the lien should not be asserted for so much of the debt as was secured by the note of Gaines; that this understanding was the consideration on which the Hulls participated in the arrangement, and that there was in the advantages gained and anticipated by the Bishops, a sufficient consideration for the waiver; and on these grounds we think that a Court of Equity should not now aid them in asserting the lien, but should regard it as virtually waived. The acceptance of collateral security from Gaines, may be referred to as confirming the inference that he, and not the land, was looked to for payment.

Wherefore, the decree dismissing the bill is affirmed.

*B. & A. Monroe and Throop* for plaintiffs: *Cavan & Cox* for defendants.